UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALMA LASERS, INC. <br><br> Plaintiff, <br><br> v. <br><br> YAN MICHAEL LI, <br><br> Defendant. | Case No.: 25-cv-4390 <br><br> District Judge: Hon. Rebecca R. Pallmeyer <br><br> Magistrate Judge: Hon. Jeannice W. Appenteng |

**PLAINTIFF ALMA LASERS, INC.'S**
**RESPONSE IN OPPOSITION TO DEFENDANT LI'S MOTION TO DISMISS**

Plaintiff Alma Lasers, Inc. ("Alma Lasers"), through its counsel Troutman Pepper Locke LLP, herby files its memorandum in opposition to Defendant Yan Michael Li's ("Dr. Li") Motion to Dismiss under Rule 12(b)(6). Defendant's Motion must be denied because (1) Alma Lasers sufficiently alleged a breach of contract claim; and (2) the Illinois' usury statute is inapposite. In the alternative, and to the extent this Court determines that Minimally Invasive Bran and Spine Institute ("MIBSI") is a necessary party, Alma Lasers respectfully requests leave to amend its Complaint to add MIBSI as an additional defendant.

**I.    Standard of Review**

In order to survive a motion under Rule 12(b)(6), a complaint need only allege sufficient factual matter that, when accepted as true and drawing all reasonable inferences in favor thereof, states a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 639 (7th Cir. 2015) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). It is further "well

1

settled" that federal pleading requirements apply even when the claim arises under state law. *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Services, Inc.*, 536 F.3d 663, 670 (7th Cir. 2008). Here, "plausibility" is not akin to "probability," but asks only for "more than a sheer possibility that a defendant has acted unlawfully.'" *Id.* Indeed, "the purpose of a 12(b)(6) motion is to test the sufficiency of the complaint, not to decide the merits of the case." *Tibor Mach. Products, Inc. v. Freudenberg-NOK Gen. P'ship*, 967 F. Supp. 1006, 1011 (N.D. Ill. 1997); *Bell Atl. Corp*, 550 U.S. at 561 ("A complaint should not be dismissed for failure to state [a] claim unless it appears beyond doubt that the plaintiff is unable to prove any set of facts which would entitle the plaintiff to relief."). As shown below, the Complaint satisfies these standards.

**II.     Alma Lasers sufficiently alleged a breach of contract claim against Dr. Li.**

To state a claim for breach of contract under Illinois law, "a plaintiff must allege: (1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) resultant damage." *TAS Distrib. Co., Inc. v. Cummins Engine Co., Inc.*, 491 F.3d 625, 631 (7th Cir. 2007). At the pleading stage, a plaintiff need only allege—rather than prove—the existence of a valid contract. *Tibor Mach. Products, Inc.*, 967 F. Supp. at 1011–18 (holding a purchase order evidenced a buyer's acceptance of an offer); *Magellan Int'l Corp. v. Salzgitter Handel GmbH*, 76 F. Supp. 2d 919, 924 (N.D. Ill. 1999) ("[A]nalysis of offer and acceptance typically involves complicated factual issues of intent—issues not appropriately addressed on a motion to dismiss.").

The Complaint states a claim for breach of contract. The Complaint states that **Dr. Li** (not MIBSI) signed a Purchase Order for the purchase of certain cosmetic laser equipment (the "Equipment") on or around October 18, 2024 for $220,000, and includes a copy of the executed Purchase Order signed by Dr. Li. (Compl. ¶¶ 1, 6; Compl. Ex. 1.) This Purchase Order identifies Defendant, Dr. Li, as the customer, shows a purchase price of $220,000 for the Equipment, plus

2

$2,500 for shipping and handling. It also includes an authorization from Dr. Li for a deposit of $22,000, and shows signatures from Dr. Li and a representative of Alma Lasers dated October 18, 2024. (Compl. Ex. 1.) Above Dr. Li's signature is a box entitled "Acceptance of Terms and Conditions and Sale; Prescribing Practitioner Acknowledgement; Payment Terms" and states:

> The customer identified in this Quotation/Purchase Order ("Customer" or "Buyer") agrees to purchase the goods and/or services identified above (the "Products") pursuant to the terms in this Quotation/Purchase Order as well as in the document entitled "ALMA LASERS, INC. TERMS AND CONDITIONS OF SALE AND LIMITED WARRANTY," which Buyer acknowledges having received and is incorporated by reference herein. … Balance to be paid in full upon delivery.

(*Id.*) The ALMA LASERS, INC. TERMS AND CONDITIONS OF SALE AND LIMITED WARRANTY, in turn states:

> The Deposit is payable upon execution of this Order by Buyer and is nonrefundable except as expressly provided in these Terms and Conditions. ***The balance of the amount due from the Buyer for the purchase of the Products must be paid by Buyer in full upon delivery of the Products***, except if otherwise specified in the Order Form. All amounts shall be paid in immediately available U.S. Dollars, without set-off or counterclaim. Interest shall be charged at the rate of 18% per year or the highest rate permitted by applicable law, whichever is less, on any invoice more than 30 days past due. Buyer agrees to reimburse Alma for its costs of collection of any past-due payments, including applicable court costs and attorneys' fees.

(*Id.*, 2 (emphasis added); *see also* Compl. ¶ 11.) These allegations amply demonstrate element 1 of the contract analysis: the existence of a valid and enforceable contract between Dr. Li and Alma Lasers.

The Complaint also alleges Alma Lasers' substantial performance of its obligations under the Purchase Order: shipping the Equipment to Dr. Li's offices. (Compl. ¶ 9.) Thus, the Complaint satisfies the second element in the contract analysis.

The Complaint also alleges that Dr. Li breached the Purchase Order by failing to pay the remainder of the purchase price upon delivery, and it alleges that Alma Lasers suffered monetary

3

damages stemming from that breach. (Compl. ¶¶ 1, 10–12; Compl. Ex. 2.) These factual allegations clearly state a claim for breach of contract under Illinois law.

Dr. Li's arguments to the contrary ignore the actual allegations of the Complaint. Rather than examine the allegations and attendant exhibits, Dr. Li cites to a single paragraph, and argues that the Complaint did "not specify the payment terms, amount due, or the due date…" under the Purchase Order. (Mot. p. 4.) Even setting aside the Exhibits, which are incorporated into the Complaint and are examined on a Rule 12(b)(6) Motion, *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002), Alma Lasers did, in fact, allege the payment terms, amount due, and the due date in the Complaint. (Compl. ¶¶ 8–10, 12.)

Dr. Li contends that Alma Lasers sued the wrong party, and Alma Lasers should have sued MIBSI instead of Dr. Li. But Dr. Li, not MIBSI, is identified as the Customer in the signed Purchase Order. MIBSI is not even mentioned anywhere in the Purchase Order. Accordingly, Dr. Li "agree[d] to purchase the goods and/or services identified" in the Purchase Order, and Dr. Li is the proper party in this action. (Compl. Ex. 1.)

To the extent this Court determines MIBSI is a necessary party, Alma Lasers respectfully requests that this Court grant it leave to amend its Complaint to add MIBSI. *Chicago Dist. Council of Carpenters Pension Fund v. R. J. Ward Const., Inc.*, No. 93-C-980, 1994 WL 63000, at *1 (N.D. Ill. Feb. 17, 1994) ("Courts are allowed broad discretion in determining whether to add an additional party to a case.").

Dr. Li's argument that the amount requested in the Complaint is unsupported lacks merit. (Mot. p. 4.) The "Order Total" demanded across the three invoices for the Equipment is $222,5000, the purchase price of the Equipment. (Compl. Ex. 1; Compl. Ex. 2.) Sales taxes owed by Dr. Li under each invoice totals $18,356.26. (Compl. Ex. 1; Compl. Ex. 2.) Dr. Li made a

deposit of $22,000, which is reflected in both the Purchase Order and Invoice No. INV-INC128846. (Compl., ¶ 11 Compl. Ex. 1; Compl. Ex. 2.) Again, setting aside the exhibits and looking only at the Complaint, the demanded amount, was "[t]he purchase price with tax and shipping," $240,856.26, after taking into account the "deposit in the amount of $22,000" paid by Dr. Li, which "le[ft] an unpaid balance totaling $218,856.26." (Compl., ¶ 1.) For the foregoing reasons, Dr. Li Motion should be denied.

### III. Dr. Li is required to abide by his agreement to pay 18% interest under the Purchase Order because the "Usury Statute" is inapplicable.

Dr. Li, a sophisticated party, agreed to pay interest at a rate of 18% per year in the event Dr. Li failed to pay for the Equipment when due. Under the terms of the Purchase Order, "interest *shall* be charged at the rate of 18% per year or the highest rate permitted by applicable law, whichever is less, on any invoice more than 30 days past due." (Compl. Ex. 1, §1) (emphasis added). Alma Lasers delivered the Equipment to Dr. Li's medical clinic on or about October 31, 2024—triggering Dr. Li's obligation to tender payment to Alma Lasers. (Compl. Ex. 2.) Dr. Li has not made any additional payments despite repeated demands. (Compl. ¶¶ 11–12.) Thus, Alma Lasers is entitled to 18% interest per annum.

Dr. Li's attempt to invoke the usury statute, the Illinois Interest Act, 815 ILCS 205/1 *et seq.*, is inapposite, and by extension, unpersuasive. (Mot. p. 4.) As a matter of first principles, the usury statute is inapplicable because the statute does not apply to bona fide purchases (like those at issue here). *Telpro, Inc. v. Renello*, No. 92-C-2504, 1994 WL 380607, at *1 (N.D. Ill. July 18, 1994), *aff'd*, 66 F.3d 328 (7th Cir. 1995) ("the Act does not apply to limit the interest rate because a 'sale is not a loan . . . and is not subject to the usury statute'"); *see also Contract Buyers League v. F & F Inv.*, 300 F. Supp. 210, 228 (N.D. Ill. 1969), *aff'd sub nom. Baker v. F & F Inv.*, 420 F.2d 1191 (7th Cir. 1970) (analyzing the predecessor statute). "[I]t is well settled that the usury statute

5

applies only to those contracts which in substance involve a loan of money or forbearance to collect money and there can be no usury when there is in no sense a loaning of money." *Computer Sales Corp. v. Rousonelos Farms, Inc.*, 190 Ill. App. 3d 388, 391–92, 546 N.E.2d 761, 763 (1st Dist. 1989) (collecting cases). And if, as is the situation here, the transaction involves a sale, it is not a "loan" subject to the interest limitations of the Illinois Interest Act. *General Motors Acceptance Corp. v. Kettelson*, 219 Ill. App. 3d 871 (2d Dist. 1991). Thus, the Illinois Interest Act and its attendant limitation on interest rates on loaned money have no bearing on the amounts owed by Dr. Li.

Moreover, the 18% interest rate is not unreasonably high. Illinois courts have long enforced contracts with an 18% per annum or 1.5% monthly interest rate. *Computer Sales Corp.*, 190 Ill. App. 3d at 392, 546 N.E.2d at 764 (enforcing sales contract that called for 1.5% interest per month); *Budnick Converting, Inc. v. Nebula Glass Int'l, Inc.*, No. 09-CV-646-DRH, 2012 WL 2017972, at *4 (S.D. Ill. June 5, 2012) (enforcing sales contract that called for 18% annual interest).

Neither of the cases relied upon by Defendant compel a contrary conclusion. The court in *Grossinger Motorcorp, Inc. v. Am. Nat'l Bank & Tr. Co.*, 240 Ill. App. 3d 737 (1st Dist. 1992), addressed a liquidated damages provision in a real estate contract because the clause was optional and did not have a fixed value. *Id.* at 752 ("In sum, we conclude that the liquidated damages provision is unenforceable and that consequently defendant is only allowed to recover actual damages resulting from the breach."). "Interest" is not mentioned once in that case. Likewise, the court in *First Nat. Bank of LaGrange v. Lowrey*, 375 Ill. App. 3d 181, 872 N.E.2d 447 (1st Dist. 2007) analyzed an attorney's claim for prejudgment interest on sums invoiced to her client and whether she was entitled to the same. *Id.* The *Lowrey* case does not concern a contractual interest

rate, nor does it in any way support the proposition that without alleging "facts justifying the rate, such as Plaintiff's cost of capital, industry standards, or specific losses from non-payment," Plaintiff's contractual rate was "designed to penalize [the] Defendant, making it unenforceable." (Mot. pp. 5–6.) Dr. Li must be required to pay 18% interest, as he willingly agreed to do when he signed the Purchase Order.

## **CONCLUSION**

For the foregoing reasons, Alma Lasers respectfully requests that this Court deny Dr. Li's Motion to Dismiss in its entirety or, in the alternative, grant Alma Lasers leave to amend its Complaint to add Minimally Invasive Bran and Spine Institute as an additional defendant, and for any other relief the Court deems just and appropriate.

May 26, 2025                                                                              ALMA LASERS, INC.

                                                                                      */s/ Ernesto R. Palomo*

Ernesto R. Palomo
Brandon Calderón
Troutman Pepper Locke LLP
111 South Wacker Drive
Chicago, Illinois 60606
Office: 312-443-0477
Atty No.: IL6278186
ernesto.palomo@troutman.com
brandon.calderon@troutman.com

7

## **CERTIFICATION OF SERVICE**

I, the undersigned attorney, certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system on 26th day of May 2025. Pursuant to FED. R. CIV. P. 5(b)(3) and the Northern District of Illinois' LR 5.9, I have thereby electronically served copies on all Filing Users.

*/s/ Brandon Calderón*
Brandon Calderón
